# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### July 2000 Session

## ANGELA L. SPURLOCK, ET AL. v. JACKSON COUNTY, TENNESSEE, ET AL.

**Appeal from the Circuit Court for Jackson County**
**No. 1202-0-209      John Wootten, Jr., Judge**

---

**No. M1999-01407-COA-R3-CV - Filed August 31, 2000**

---

The appellants were hurt in a collision with a subject allegedly being pursued by county officers in a high speed chase. They sued the county, and the Circuit Court of Jackson County granted the county summary judgment. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Wm. Gerald McCaskill, Jr. and Ernest D. Bennett, III, Nashville, Tennessee, for the appellant, Angela L. Spurlock.

Daniel H. Rader, III, Cookeville, Tennessee, for the appellees, Jackson County, Tennessee, and Charles McBroom, Jackson County Sheriff.

Jerry Jared, Cookeville, Tennessee, for the intervening petitioner, Tennessee Farmers Mutual Insurance Company.

## OPINION

### I.

The accident occurred while Bobby Bull was attempting to evade capture by the police and his automobile crossed over the center line of the road striking the vehicle in which the appellants were traveling in the opposite direction.

The record establishes that on November 10, 1995, the Jackson County Sheriff's Department commenced a search for Bobby Bull after receiving a report that Mr. Bull was drinking and shooting

a gun. According to the testimony of Sheriff Charles McBroom and Deputy J.B. Hix, Mr. Bull's criminal history, including assaults, drunk driving and burglary, was well known in the Sheriff's Department. Deputy Hix, accompanied by Deputy Jeff Bowman, drove his patrol car to a house occupied by Mr. Bull's mother. The deputies then learned, by way of a 911 dispatch call, that there was a report that Mr. Bull was armed and was going to shoot Danny Knight at Lon Chaffin's Trailer Park. Upon arriving at Mr. Bull's mother's house, the deputies observed a car with its lights on parked behind the house. Deputy Hix then drove to a church located at a nearby intersection. When a car matching the description of Mr. Bull's car approached from the direction of his mother's house, the deputies proceeded to follow the car. The deputies then checked the tag number of the vehicle and discovered that the car was registered to Mr. Bull. None of the other deputies or the sheriff were close enough to set up a roadblock, so Deputy Hix turned on his blue lights and siren. At this point, the vehicles were driving on Chaffin Hill Road, a gravel road not heavily traveled. Mr. Bull did not stop his vehicle.

Upon reaching Morrisons Creek Road, a "tar and chip" road, Mr. Bull turned left and the deputies continued the pursuit. When the vehicles reached the intersection with McCoinsville Road, a paved two-lane road, Mr. Bull stopped his car. Deputy Hix stopped the patrol car several car lengths behind Mr. Bull's car, but Mr. Bull then proceeded to turn left onto McCoinsville Road. After driving his vehicle approximately 20 yards, Mr. Bull stopped and threw a gun out of the passenger side window and then drove away. At this point, Deputy Hix radioed Sheriff McBroom and stated that he was going to stop and retrieve the weapon and that the pursuit had ended. Deputy Hix then drove up beside the discarded weapon and Deputy Bowman retrieved the gun and a loaded clip that had fallen out of the gun when Mr. Bull threw the weapon to the ground.

Deputy Hix and Deputy Bowman testified that at this point, they lost sight of Mr. Bull. Deputy Hix further testified that there was no traffic on McCoinsville Road at that time. Deputy Hix then began to drive down McCoinsville Road looking for Mr. Bull with the patrol car lights and siren still activated. The deputies testified that they drove slowly down the road looking for Mr. Bull in driveways, around houses, and in the Lon Chaffin Trailer Park.[1] Approximately 1 to 1 ½ miles from the point where the gun was discarded, the deputies came upon the wreck involving Mr. Bull and the appellants. Upon arriving at the scene of the accident, Deputy Hix noticed a strong odor of alcohol in Mr. Bull's car and observed several beer and whiskey bottles in the car. The record establishes that Mr. Bull was traveling southbound on McCoinsville Road when his car crossed the center line and struck the appellant's vehicle in the oncoming lane of traffic. The accident occurred at approximately 5:50 p.m.

The appellants filed a complaint alleging that the appellees were guilty of negligence, gross negligence, and negligence per se and that such negligence was the proximate cause of the accident resulting in the appellants' injuries. The trial court found that there were no material issues of

---

[1] The evidence established that there was an entrance to the Lon Chaffin Trailer Park on McCoinsville Road near the location where Mr. Bull threw the weapon out of his car.

genuine fact in dispute and granted Jackson County and Sheriff's McBroom's motion for summary judgment.

## II.

Summary judgment is appropriate only where there is no dispute as to material facts and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Decisions to grant summary judgment do not enjoy the presumption of correctness on appeal. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). In addition, summary judgment is not a substitute for a trial on disputed factual issues and should not be used to find facts or choose between various factual inferences that could be drawn from the facts. *Gonzales v. Alman Construction Co.*, 857 S.W.2d 42, 44 (Tenn. Ct. App. 1993); *Byrd v. Hall*, 847 S.W.2d 208, 216 (Tenn. 1993). A trial court ruling on summary judgment must view the pleadings and the evidence in the light most favorable to the non-moving party and must draw all reasonable factual inferences in favor of the non-moving party. *Byrd*, 847 S.W.2d at 210-11; *Dillard v. Vanderbilt University*, 970 S.W.2d 958, 959 (Tenn. Ct. App. 1998).

We first note that Jackson County is subject to liability in the present case pursuant to the Governmental Tort Liability Act. Tenn. Code Ann. § 29-20-101, et seq. Under the circumstances of this case, the Act makes Sheriff McBroom immune from liability. *See* Tenn. Code Ann. § 29-20-310(b). Therefore, Sheriff McBroom was entitled to summary judgment on this basis.

Although under previous case law, Jackson County would have been immune from liability as well, the Governmental Tort Liability Act and our Supreme Court's decision in *Haynes v. Hamilton County*, 833 S.W.2d 606 (Tenn. 1994), have combined to open the county up to a limited liability for persons hurt as a result of a high speed chase. In *Haynes*, the Supreme Court held that an officer's decision to commence or continue a high-speed chase may form the basis of liability, if the officer's decision was unreasonable. 883 S.W.2d 606, 611 (Tenn. 1994). In determining whether the decision was unreasonable, the court is to weigh the risk of injury to innocent third parties against the interest in apprehending the suspect. *Id.* at 611. Factors set out for consideration included the speed and area of the pursuit, weather and road conditions, the presence or absence of pedestrians and other traffic, alternative methods of apprehension, applicable police regulations, and the danger posed to the public by the fleeing suspect. *Id.* Additionally, the Court set out that the officer's conduct should be viewed in light of how a reasonably prudent police officer would respond under the circumstances and not judged with the prefect vision afforded by hindsight. *Id.*

Not only must the above requirements be met but, in Tennessee, no claim for negligence can succeed in the absence of any one of the following elements: (1) duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) injury or loss; (4) causation in fact; and (5) proximate, or legal cause. *Id.* Proximate cause is determined by the following three-pronged test:

(1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Id.* (citing *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991)).

In the case before us, it is undisputed that the pursuit of Mr. Bull came after a report to the Sheriff's Department that Mr. Bull was drinking, was shooting a gun, and had plans to kill Mr. Knight. The evidence is further undisputed that the pursuit was initiated on a rural road where there was little traffic, that the weather was clear, and that there were no other officers close enough in proximity to set up a roadblock. Therefore, the decision to try to arrest Mr. Bull by turning on the blue lights and the siren was reasonable.

The record further establishes that when Mr. Bull stopped and threw away the pistol, the deputies stopped the patrol car and retrieved the weapon and its several parts while Mr. Bull drove away on McCoinsville Road. The only disputed fact is whether, when the deputies proceeded down McCoinsville road after collecting the weapon, they resumed the pursuit of Mr. Bull. However, even assuming that the deputies resumed the pursuit, such a decision would not have been unreasonable. There is no evidence establishing that the patrol car was proceeding at a high rate of speed down McCoinsville Road. In fact, the undisputed proof suggests otherwise. In addition, there were reports that Mr. Bull was drinking, had discharged a weapon and was going to kill Mr. Knight. The officers watched him discard a loaded weapon. There was no evidence that there were any other cars on McCoinsville road at this point in time. Therefore, assuming that Deputy Hix resumed the pursuit, such a decision was not unreasonable and would not be a sufficient basis upon which to base liability.

In any case, we cannot find that the pursuit of Mr. Bull was the proximate cause of the accident with the appellant. The pursuit was not a substantial factor in the resulting accident. The evidence established that Mr. Bull had been drinking prior to the accident and that the accident occurred when his vehicle crossed the center line of the road into the oncoming lane of traffic. Although Mr. Bull was in the process of fleeing from the deputies, they had stopped, at least briefly, to collect his discarded weapon while he continued to flee. These undisputed facts are insufficient to form the basis of liability for negligence in Tennessee.

We find that there are no genuine issues of material fact with regard to the alleged negligence of Jackson County and/or the proximate cause of the accident involving Mr. Bull and the appellant. In light of the foregoing, the appellee Jackson County was also entitled to a grant of summary judgment.

The judgment of the trial court is affirmed and the cause remanded to the Circuit Court for Jackson County for any further proceedings necessary.  Tax the costs on appeal to the appellant, Angela J. Spurlock.


_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.